MARCUS, Justice.
Houston Hines, Jr. was charged by bill of information with receiving stolen things, to-wit: a Montclair tape player and tapes having a total value of $99.00, in violation of R.S. 14:69. It was asserted that the stolen items were the property of Roy *315 Dawson Crowder. Defendant sought to suppress the evidence seized in connection with the charged offense, claiming the seizure was the result of an unconstitutional search of his car on an earlier date. By agreement of the parties, the motion to suppress was consolidated with the trial on the merits. At the conclusion of the trial, the judge overruled the motion to suppress, found defendant guilty and sentenced him to pay a fine of $100.00 and cost, or, in default, 30 days in jail and to serve 30 days in the parish jail. Upon defendant’s application to this court, we granted certiorari. Four assignments of error are presented for our review.
FACTS
Roy Crowder, an employee of the Otasco Store in West Monroe, reported to the police that his Montclair tape player and tapes had been taken from his parked car while on the lot in the rear of the store. The date of the reported theft was December 5, 1974. Around this time, Deputy Cook of the Ouachita Sheriff’s Office stopped a vehicle which was being operated by Houston Hines, Jr. The reason for the stop given by Cook was a loud muffler. Cook knew Hines from a previous pickup for auto theft and also knew that he had just been released from prison. He had also heard from a confidential informer that Hines was “pushing drugs.” Cook looked in the vehicle and also opened the trunk and a suitcase. According to Cook, Hines freely consented to the search. Nothing was found; however, Cook admitted that he noticed a tape player in the vehicle at the time. Hines was neither given a ticket nor arrested. Cook stated that he did not give him a ticket for the muffler violation for the reason that he did not want to cause him any more problems.
Later, Cook received information that the reported stolen tape player and tapes belonging to Crowder could be found at a boarding house owned by Mr. & Mrs. Hearne, where Hines was then staying. When interrogated by Cook about the stolen items, Mrs. Hearne gave her permission for Cook to take six tapes which she pointed out on a table in the dining room. Mrs. Hearne had seen Hines bring these tapes, together with a tape player, into the residence; however, he had removed the tape player that morning. These tapes were later identified by Crowder as part of the stolen items. Cook then talked to the girlfriend of Hines, Shirley Glass, who also lived in the Hearne house. She gave information that Hines had brought the tapes and tape player into the house. Information was later received from Hines that the tape player had been pawned by him to Ike Square for $10.00. Thereafter, Square surrendered the tape player to the authorities.
According to Cook, Hines told him, after being arrested and advised of his rights, that his half brother (Larry Minniefield) had given the tape player and tapes to him for his birthday. He further testified that Hines told him that he knew the items were stolen at the time he received them because his brother did not have any money to make such a purchase. Hines was first charged with theft of the items, but this charge was later amended to receiving stolen things, a violation of R.S. 14:69.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the verdict is contrary to the law and evidence. It is uncertain whether this assignment of error is directed to the trial judge’s denial of the defendant’s motion for a directed verdict of acquittal or his motion for a new trial. In his motion for a directed verdict, defendant argued that the “evidence as presented does not justify going forward.” We will assume that this is an allegation of no evidence, as we can only reverse the trial judge’s ruling on the directed verdict motion if, as a matter of law, we find that there is “no evidence” of some element of the offense in the récord. State v. Douglas, 278 So.2d 485 (La.1973).
*316 R.S. 14:69 provides in pertinent part:
Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.

The victim of the theft, Roy Crow-der, identified the tape player and tapes as the ones stolen from him. He placed a value on the items taken at about $99.00. Deputy Cook testified that, after he arrested defendant and advised him of his rights, defendant stated that his brother had given the items to him as a birthday present and he knew that they were stolen at the time, as his brother did not have any money to make such a purchase. Certainly, this constituted some evidence of each element of the crime charged. Hence, the trial judge correctly denied defendant’s motion for a directed verdict of acquittal.
In regard to defendant’s motion for a new trial, an assertion that the verdict as rendered is contrary to the law and the evidence presents nothing for our review. State v. Lisenby, 306 So.2d 692 (La.1975); State v. Gilbert, 286 So.2d 345 (La.1973). In sum, there is no merit in this assignment of error.
ASSIGNMENTS OF ERROR NOS. 2 AND 4
These assignments of error relate to the trial court’s denial of defendant’s motion to suppress evidence (Assignment of Error No. 2) and its permitting introduction of the tape player and tapes into evidence (Assignment of Error No. 4).
Defendant contends that these objects were seized as a result of a prior unconstitutional search of his vehicle by Deputy Cook. He argues that the information received at that time led to the subsequent search and seizure of the tapes at the Hearne house and the surrender thereafter of the tape player by Ike Square.
At the outset, we might say that, while defendant disputes that Deputy Cook made the initial stop of his vehicle because of a loud muffler, the record does not support his position. In addition to Deputy Cook’s testimony to this fact, defendant himself admitted that his muffler was a “little loud” and his exhaust was “leaking.” Also, his brother testified that only a couple of days before they had put some “gaskets” on it. Hence, we have no difficulty in concluding that Deputy Cook stopped the Hines vehicle because of a loud muffler.
Next, we agree with the finding of the trial judge that defendant freely and voluntarily consented to the search of his car. While Deputy Cook emphatically testified as to defendant’s consent, this fact is denied by defendant. Upon stopping defendant for a muffler violation, Deputy Cook recognized Hines and knew that he had just been released from prison and was on parole. He also had information that defendant had been involved with drugs. While these facts might be insufficient to establish probable cause for the search, they do support Deputy Cook’s testimony that defendant willingly invited him to check his vehicle. The fact that no drugs were found lends credence to Cook’s assertion. Obviously, defendant wanted to show him that he did not possess any drugs. Hence, we conclude that defendant freely consented to the search of his vehicle. A search conducted pursuant to a valid consent is constitutionally permissible.[1] It then follows that Deputy Cook’s view of the tape player during this legal search in no way tainted the subsequent seizure of this item and the tapes. Likewise, the sei *317 zure thereafter of the tape player from Ike Square and the search and seizure of the tapes from Mrs. Hearne were based on their valid consent.[2] Hence, the trial court correctly denied the motion to suppress and permitted the introduction of the tape player and tapes into evidence.
ASSIGNMENT OF ERROR NO. 3
Defendant claims the trial court erred in permitting the introduction of testimony concerning oral inculpatory statements made by defendant to Deputy Cook.
Defendant made no objection when Deputy Cook testified as to these statements. Likewise, defendant himself took the stand and corroborated that these statements were in fact made. Hence, there is no ground for complaint, as any irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence.[3] La.Code Crim.P. art. 841 (1966), as amended, La.Acts 1974, No. 297, § 1. Article 920 of the Code of Criminal Procedure provides:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
La.Code Crim.P. art. 920 (1966), as amended, Acts 1974, No. 207, § 1 (emphasis added). Paragraph (b) to the Official Revision Comment under Article 920 of the Code of Criminal Procedure provides in pertinent part:
The 1974 amendment to clause (1) basically conforms the article to the assignment of errors procedure. For errors to be included in the assignment of errors reviewable on appeal, the requisite procedures must have been followed. See Arts. 841, 842, 844, 845, 851, 859.
Hence, no error is presented in this assignment of error for appellate review.
DECREE
For the reasons assigned, the conviction and sentence are affirmed.

. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 864 (1973) ; State v. Sears, 298 So.2d 814 (La.1974) ; State v. McMellon, 295 So.2d 782 (La.1974).

. State v. Forbes, 310 So.2d 569 (La.1975); State v. Taylor, 303 So.2d 169 (La.1974); State v. Frierson, 302 So.2d 605 (La.1974).

. The requirement of an objection shall not apply to the court’s ruling on any written motion.