542 So.2d 42 (1989)
STATE of Louisiana, Appellee,
v.
William C. KELTNER, Appellant.
No. 20330-KA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*43 Davenport, Files & Kelly by Lavelle B. Saloman, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, and Stephen K. Hearn, Jr., Asst. Dist. Attys., Ruston, for appellee.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The defendant, William C. Keltner, appeals his convictions and sentences for one count of aggravated obstruction of a highway of commerce and two counts of negligent homicide, violations of LSA-R.S. 14:96 and 32, respectively. The defendant was sentenced to three years at hard labor on each count, with the sentences to run concurrently. For the following reasons, we affirm the convictions and sentences.

FACTS
The defendant, a resident of Tampa, Florida, was employed by B & M Enterprises as a truck driver. In June, 1987, the defendant, operating an 18 wheeler, accompanied by his "common law" wife and co-driver, Bonnie Sue Anderson, and his 12-year-old daughter, picked up a load of lava rocks in Las Cruces, New Mexico for transport to Columbus, Georgia. The rocks weighed approximately 40,000 pounds.
On Sunday, June 21, 1987, the defendant and his companions stopped at a truck stop in Shreveport, Louisiana. The defendant was having trouble with a right rear tire on the trailer. The tire was replaced with the spare and around 9:30 or 10:00 p.m. the defendant and his party left the truck stop heading east on I-20. The defendant was driving. Around Milepost 50, west of Minden, Louisiana, Ms. Anderson noted a noise from a tire. The defendant pulled into a rest area near Minden and discovered the tire was flat. According to Ms. Anderson, she and the defendant spent about one hour at the rest stop conferring on what they should do and what course of action to take. At that time, they also shared a marijuana cigarette. Ms. Anderson stated that they had smoked another marijuana cigarette several hours previously.
The defendant learned that there was a truck stop at Milepost 103, near Monroe, Louisiana. He then decided to proceed on to the truck stop by driving along the shoulder of the road at a slow rate of speed, less than 35 miles per hour.
At around Milepost 80, a second tire, also on the right rear of the truck, on the same axle, went flat. The defendant then continued to drive along the shoulder of the road at approximately 5 miles per hour, occasionally pulling onto the main portion of the roadway when the shoulder became too rough. The defendant stated that he did not stop and call for road service because he thought he could make the last twenty miles to the truck stop.
On that evening, Mr. Jack Marcum was eastbound on I-20 in his automobile. He narrowly escaped colliding with the rear of the defendant's truck. Marcum was able to safely swerve around the defendant. According to Marcum, the defendant's emergency flashers were functioning.
A truck driver, Harrel Reeves, stated that he also nearly collided with the rear of the defendant's truck. The truck was moving slowly. Although its lights were on, the emergency flashers were not in operation. Reeves stated he contacted the defendant by citizen's band radio and inquired if assistance was needed. The defendant stated that he had two flat tires, but declined assistance.
At approximately 12:25 a.m. June 22, 1987, the defendant's truck was approached from the rear by a Continental Trailways passenger bus which was en route from Shreveport, to Jackson, Mississippi. The bus collided with the tractor-trailer rig, which at that point was half-way *44 on the roadway and traveling at a slow rate of speed. Two passengers on the bus were killed and fifteen others were injured. The accident occurred near Ruston, in Lincoln Parish.
According to officers of the Louisiana State Police who investigated the accident, the defendant appeared very unconcerned following the accident and at times appeared incoherent.
The defendant consented to a search of the truck and marijuana was recovered from the cab.
Following the initial investigation, the defendant and Ms. Anderson were transported to jail in Ruston, where they were detained. The record is unclear as to what charges, if any, were initially filed. However, the record contains a form indicating that the defendant was arrested at approximately 9:00 a.m. on Monday, June 22, 1987, by the Louisiana State Police in connection with the deaths of the bus passengers. The record also indicates that the defendant was arrested for simple possession of marijuana.
Again, although the record is unclear, it appears that when this case came to the attention of the District Attorney's office, and perhaps because the defendant and Ms. Anderson were non-residents of Louisiana, and because the investigation was not complete, an affidavit and warrant were prepared and filed on June 22, 1987, alleging that both the defendant and Bonnie Sue Anderson were material witnesses. Pursuant to those allegations, the defendant and Bonnie Sue Anderson were held by Lincoln Parish authorities as material witnesses. On June 23, 1987, with counsel present and representing them, the defendant and Ms. Anderson both gave material witness depositions in open court. The minutes indicate that the defendant was thereafter charged with negligent homicide, negligent injury, possession of marijuana and impeding the flow of traffic. He was arraigned on those charges on June 24, 1987. The bill of information was later amended to charge the defendant with one count of aggravated obstruction of a highway of commerce and two counts of vehicular homicide. The defendant was not charged in connection with the fifteen injuries resulting from the accident. No charges were filed against Ms. Anderson.
In their depositions, both the defendant and Ms. Anderson admitted that they had used marijuana on June 21, 1987. According to Ms. Anderson, they had both used marijuana shortly before the accident. Blood and urine samples taken from the defendant showed recent use of marijuana. On November 4-6, 1987, the defendant was tried before a jury. The defendant's material witness deposition was admitted in evidence without objection. Ms. Anderson did not appear at trial. However, her deposition was also introduced into evidence by the state without objection.
On November 6, 1987, the jury found the defendant guilty of one count of aggravated obstruction of a highway of commerce and two counts of negligent homicide, a lesser included offense of vehicular homicide. The defendant appeals his convictions and sentences, urging several assignments of error.

MATERIAL WITNESS DEPOSITIONS
The defendant argues several assignments of error concerning the admission at trial of his material witness deposition and that of Bonnie Sue Anderson. The defendant contends that his arrest as a material witness was not legal but was merely a subterfuge in order to question him about the accident. He claims his deposition was not given voluntarily but was coerced, arguing that he was being held in custody with no one to care for his minor daughter and that he was told he might be released if he gave a deposition. He also claims that the deposition of Bonnie Sue Anderson was improperly admitted at trial because the prosecution failed to show that Ms. Anderson was unavailable at the time of the trial. These arguments cannot be considered in this appeal.
The defendant was represented at trial *45 by retained counsel.[1] At trial, no objection was made to the introduction of these two depositions. The defendant's arguments regarding the admissibility of the depositions are presented for the first time on appeal.
Contemporaneous objections are required in order to preserve the alleged error on appeal. LSA-C.Cr.P. Art. 841, at the time of this trial, provided:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires to take, or of his objections to the action of the court, and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion.
The contemporaneous objection rule of LSA-C.Cr.P. Art. 841 is necessary in order to promote judicial efficiency and in order to prevent a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors that might easily have been corrected at trial. State v. Marcell, 320 So.2d 195 (La.1975).
The jurisprudence has recognized certain limited exceptions to the contemporaneous objection rule based upon prejudice to the due process rights of the defendant. State v. Alexander, 430 So.2d 621 (La.1983). In addition, the rule is not applied in those very rare occasions when the error is so fundamental that it substantially undermines the reliability of the fact finding process in a criminal trial. State v. Arvie, 505 So.2d 44 (La.1987).
In the present case, the defendant argues that because his arrest as a material witness was not legal, his deposition was tainted by the illegality. He also contends that the statements he made at the deposition were not voluntary, but were coerced.
Prior jurisprudence has not found alleged defects of this kind to rise to the level of substantially undermining the factfinding process. In State v. Powell, 325 So.2d 791 (La.1976), the defendant raised for the first time on appeal an objection to the admissibility of his confession, claiming it was not given voluntarily and was tainted by an illegal arrest. The Louisiana Supreme Court found that since this objection was not raised in the lower court or ruled upon by the trial judge, it would not be considered on appeal. Other cases have also held that a defendant may not object on appeal to the admission at trial of inculpatory statements absent a contemporaneous objection. State v. Hoffpauir, 355 So. 2d 929 (La.1978); State v. Hines, 319 So.2d 313 (La.1975); State v. Hebert, 443 So.2d 613 (La.App. 3rd Cir.1983).
Based upon the record before this court, it does not appear that the admission of the defendant's deposition would substantially undermine the reliability of the factfinding process. The defendant, after being informed of his Miranda rights, gave a statement to law enforcement officials regarding the facts of the accident and admitting the use of marijuana. The substance of the defendant's initial statements to the officers were consistent with his material witness deposition. Even if the deposition had not been admitted, there was sufficient other testimony presented at trial to support the defendant's conviction.
Therefore, because the defendant failed to object at trial, the legality of his arrest as a material witness and the voluntariness of his deposition cannot now be considered on appeal.
As to the deposition of Ms. Anderson, the trial court specifically inquired regarding any objection counsel might have to its introduction. Defendant's counsel stated to the court, "He [the defendant] was in the courtroom on the day this particular hearing was conducted. He was well aware of what was going on and the advice *46 of his counsel. He had no objections to it and he doesn't have any objections to it now, Your Honor." The court also inquired of the defendant if he had any objection to the use of Ms. Anderson's deposition and the defendant indicated that he did not. Considering this colloquy, it is clear that nothing is presented for our review.
In light of the above, we find that the defendant's arguments as to the admissibility of the material witness depositions do not require imposition of the exception to the contemporaneous objection rule. Because these issues were not raised in the trial court they cannot now be considered on appeal.
These assignments of error have no merit.

CRIME LAB REPORT
The defendant claims the trial court erred in admitting the results of a crime laboratory report without proper notice that the report would be used against him at trial. This argument is meritless.
Following the accident, blood and urine samples were taken from the defendant. These samples were submitted for analysis to the Center for Human Toxicology at the University of Utah by the National Transportation Safety Board. Results of the analysis were made available to the Lincoln Parish District Attorney's Office for use in the prosecution of the defendant.
Use at trial of evidence from criminalistics laboratories is governed by LSA-R.S. 15:499-501. These statutes set forth the required contents of a crime lab certificate or report, including the names of the persons delivering the evidence, the person receiving the evidence, the person who analyzed or examined the evidence, the signatures of the person who made the analysis or examination and the person in charge of the facility.
LSA-R.S. 15:500 provides that a crime laboratory certificate may be received into evidence as prima facie proof of the facts shown therein and of proper custody of the physical evidence which is analyzed or examined.
LSA-R.S. 15:501 provides that the party seeking to introduce such a certificate must give notice of such intent, with a copy of the certificate, not less than ten days prior to the commencement of trial. The party against whom the certificate is to be used may then subpoena for cross-examination the persons who performed the analysis or examination of the evidence. In such a case, if the subpoena is requested at least five days prior to trial, or the person subpoenaed appears at trial, the certificate itself is not prima facie proof of its contents or of proper custody of the evidence.
The record shows that on September 4, 1987, the prosecution filed a response to the defendant's motion for discovery. On September 16, 1987, a supplemental response was filed and attached to it was the report concerning the defendant's blood and urine samples. However, the report did not contain the name of the person receiving the samples or the name and signature of the person who analyzed the samples.
In order to correct these deficiencies, the state filed into the record an additional supplemental response to discovery on October 20, 1987. In this supplemental discovery response the state informed defense counsel of its intent to use the laboratory report and included another copy of the certificate along with the requisite names and signatures, all in compliance with LSA-R.S. 15:499, et seq. This notice was filed more than ten days before the trial commenced.
However, at trial, when the prosecution sought to introduce the crime laboratory report, defense counsel objected, claiming that he had never received the supplemental response of October 20, 1987, which included notice of intent to use the certificate at trial. Defense counsel argued that because no notice of intent was given, the laboratory report was not admissible. He also claimed that because the supplemental response was not received, the defense was precluded from subpoenaing the persons who analyzed the samples.
Outside the presence of the jury, both the prosecutor and defense counsel were *47 sworn and testified as to events surrounding the supplemental response of October 20, 1987. The prosecutor testified that on October 20, 1987, he hand delivered the supplemental response to defense counsel at the courthouse. Defense counsel testified that he did not believe he was at the courthouse on October 20, 1987. However, he acknowledged that he had been at the courthouse and might have received the notice during that week, which would have been timely under the statute. The court then ruled that defense counsel had timely received the crime lab report and notice of intent of its use at trial and found the report to be admissible.
Considering the record, the prosecutor's testimony and the statements by defense counsel, we conclude that defense counsel received proper notice within ten days of the commencement of the trial and therefore the trial court was correct in admitting the crime lab report.

EXCESSIVE SENTENCE
The defendant was convicted of aggravated obstruction of a highway of commerce and two counts of negligent homicide. The defendant was sentenced to serve three years at hard labor on each of these three convictions, with the sentences to be served concurrently. On appeal, the defendant claims his sentences are excessive because the trial court placed undue and incorrect emphasis upon his prior criminal record. The defendant argues that his criminal record, compiled in the State of Kentucky, consists of misdemeanors, but that the trial court incorrectly construed the offenses to be felonies. The defendant's argument is meritless.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const.1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La. 1984).
*48 The record indicates the trial court properly complied with the requirements of LSA-C.Cr.P. Art. 894.1. The court considered that because the defendant was convicted of negligent homicide rather than vehicular homicide, the jury technically acquitted the defendant of charges of operating his vehicle under the influence of drugs. The court noted that although the defendant's conduct was not intentional, he was criminally negligent and passed up numerous opportunities to leave the roadway and avoid harm to others. The court further stated that the driver of the bus was also involved in causing the accident.
The trial court considered the defendant's prior criminal record. In Kentucky, in 1978, the defendant was convicted of third degree burglary, possession of marijuana, bail jumping and carrying a concealed deadly weapon. The defendant was sentenced to serve 12 months each for the convictions of burglary, bail jumping and carrying a concealed weapon and 90 days for possession of marijuana. All sentences were to be served concurrently. The defendant contended that these offenses were misdemeanors and not felonies. The trial court found that the grade of the offenses was not clear but gave the defendant "the benefit of the doubt." The court then stated that even if the defendant was not a second felony offender, the court would still not suspend the sentences imposed. The court also stated that the defendant's past criminal record indicated anti-social behavior.
The court found the defendant was in need of correctional treatment best afforded by a custodial environment and found that imprisonment would not pose an undue hardship upon the defendant's dependents. The court then sentenced the defendant to three years at hard labor on each count, with the sentences to run concurrently. The sentences imposed are well supported by the record.
Further, the sentences imposed are not unconstitutionally excessive and do not constitute the needless and purposeless imposition of pain and suffering. The offenses committed by the defendant were very serious, resulting in the loss of two lives and serious injury to numerous other persons.
The maximum possible sentence under LSA-R.S. 14:96 for aggravated obstruction of a highway of commerce is imprisonment with or without hard labor for not more than fifteen years. For this offense, the defendant was sentenced to serve three years at hard labor.
The maximum possible sentence for negligent homicide is five years imprisonment, with or without hard labor, and a fine of $5000. The defendant was sentenced to serve three years at hard labor on both counts with all sentences in this case to run concurrently.
Given the seriousness of the offenses and the defendant's background, the sentences are not excessive.

CONCLUSION
For the above stated reasons, the convictions and sentences of the defendant, William C. Keltner, are affirmed.
AFFIRMED.
NOTES
[1] We note that the defendant's counsel on appeal is not the attorney who represented him in the trial court.