871 So.2d 1087 (2004)
STATE of Louisiana
v.
Brian SALTZMAN.
No. 2003-KK-1423.
Supreme Court of Louisiana.
April 8, 2004.
*1088 PER CURIAM.
Granted. The decision of the court of appeal is vacated to the extent that it orders suppressed the initial statements made by the defendant to the child protection investigators before he received Miranda warnings from the detective who observed the interview and then placed the defendant under arrest at its conclusion. The ruling of the trial court denying the defendant's motion to suppress his statements in their entirety is therefore reinstated.
In determining whether an individual is in custody for purposes of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), courts must consider all of the circumstances surrounding the interrogation, and "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). This determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officer or by the person being questioned." Id. That an individual is a suspect of the police conducting a criminal investigation therefore does not determine whether the interrogation occurs in a custodial context for purposes of Miranda, and "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Stansbury, 511 U.S. at 325, 114 S.Ct. at 1530. Accordingly, "an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." Id.
In the present case, the defendant went to the Office of Child Services voluntarily, and he was not arrested or otherwise restrained until after the interview ended and the detective formally placed him under arrest. Any reasonable person in defendant's position would have realized that he was the focus of a criminal investigation when the child protection investigators cajoled him to stop lying after he initially denied any misconduct. However, when the defendant asked the detective whether he was going to jail, and the officer replied he would talk to him at the end of the interview with the child protection investigators, defendant failed to ask if the detective meant that he was not free to leave and was therefore in custody. In *1089 fact, the detective testified at the suppression hearing that at this point the defendant had been free to walk out of the office because he "hadn't admitted to anything yet." The detective's subjective determination that defendant "probably would not have been free to go" after he then began making inculpatory admissions to the child protection investigators, i.e., that the officer had decided to make an arrest, was not communicated to the defendant until the end of the interview, when Miranda warnings and formal arrest followed.
Under these circumstances, the defendant was not "in custody" for Miranda purposes at the time he made his first set of inculpatory statements and the trial court therefore correctly denied the motion to suppress his initial statements and the videotaped statement which followed his formal arrest and transportation to the Calcasieu Parish Sheriff's Office.