# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 07-1443

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL W. SMITH**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 04-1962
HONORABLE PAUL JOSEPH deMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

Ezell, Judge, dissents and assigns written reasons.

**J. Phil Haney, District Attorney**
**Walter J. Senette, Jr., Assistant District Attorney**
**Sixteenth Judicial District**
**St. Mary Parish Courthouse**
**Franklin, LA 70538**
**Counsel for State of Louisiana**

**Richard A. Spears, Attorney at Law**
**P.O. Box 11858**
**New Iberia, LA 70560**
**Counsel for Defendant-Appellant:**
    **Michael W. Smith**

**PAINTER, Judge.**

Defendant, Michael W. Smith, appeals his convictions and sentences on the charges of attempted aggravated escape and aggravated obstruction of a highway. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2005, the State charged Defendant, Michael W. Smith, with one count of aggravated escape, in violation of La.R.S. 14:110(C)(1), and one count of aggravated obstruction of a highway, in violation of La.R.S. 14:96. Defendant's trial began September 7, 2005, and continued through September 9, 2005. At the conclusion of trial, the jury found Defendant guilty of attempted aggravated escape and guilty as charged of aggravated obstruction of a highway.

The district court ordered Defendant to serve ten years at hard labor for the aggravated obstruction conviction and to serve five years at hard labor for the attempted aggravated escape conviction. Defendant was given credit for all time served, and the sentences were ordered to run consecutively with each other.

The State filed a multiple offender bill against Defendant.[1] The district court conducted Defendant's habitual offender hearing on June 29, 2007. At the hearing, Defendant pled guilty to second offender status. The district court vacated Defendant's aggravated obstruction penalty, replaced it with an eighteen-year hard labor sentence, and, again, gave Defendant credit for all time served.

Defendant now appeals, arguing that there was insufficient evidence presented at trial to support his convictions and that the trial court erred in not allowing a particular jury instruction.

---

[1]The State actually filed the multiple bill against Defendant prior to imposing the original sentence.

1

At trial, the State called Iberia Parish Sheriff Detective Shane Landry as its first witness. Detective Landry was in his current position on the date of the incident, October 29, 2004. On that day, the Lafayette Parish Sheriff's Office sent Detective Landry an arrest warrant for Defendant, with whom Detective Landry was familiar. Detective Landry then began to search for Defendant. After watching Defendant's hotel room for about twenty minutes, Detective Landry saw Defendant approach and enter the room.

Detective Landry called patrol officers to assist him, and when Detective Landry exited the building, one of the patrolmen, Sergeant Trent Walker, was talking to Defendant. Defendant sat in a blue 2007 Chevrolet extended cab truck, which Detective Landry had previously been informed that Defendant was using. Detective Landry informed Sergeant Walker of Defendant's identity and the arrest warrant.

Detective Landry watched as Sergeant Walker walked to the driver's door of the blue pickup. Detective Landry then heard tires squealing and saw the vehicle leave. Detective Landry reported that Sergeant Walker had been in the truck's driver-side doorway when it began moving; Sergeant Walker followed the moving vehicle while still inside the doorway. Detective Landry immediately returned to his unit, which he had parked "way in the front."[2] Detective Landry attested that, by the time he reached his vehicle, there was no way he could catch up to Defendant because Defendant was long gone. Defendant was not apprehended that night, but officers finally arrested Defendant in St. Landry Parish on November 6, 2004.

Iberia Parish Sheriff Sergeant Trent Walker was the second witness to testify for the State. Sergeant Walker was working patrol on October 29, 2004, and he assisted Detective Landry in executing an arrest warrant. Sergeant Walker had been

---

[2]Detective Landry did not specify whether he had parked in front of the hotel or in the front portion of the parking lot.

given the description and plate number of the blue truck Defendant was using. Detective Landry twice called him to the hotel where Defendant was staying. On the second call, Sergeant Walker noticed a blue truck in the parking lot and went to investigate. As he neared the blue truck, he noticed Defendant walking quickly toward him. Defendant acted nervous.

Sergeant Walker called Defendant over and asked Defendant for his name. Defendant gave a false name and continued looking nervous. When Sergeant Walker asked for identification, Defendant walked to the truck, opened the door, and stood at the door entrance. Sergeant Walker went to the rear of the automobile to verify the license plate number he had been given earlier; the numbers did not match. When Sergeant Walker looked up from comparing the numbers, Defendant was seated in the truck.

As Sergeant Walker approached Defendant, Detective Landry ran into view and identified Defendant as the person for whom they were looking. At that point, Defendant attempted to close the truck's door, but Sergeant Walker caught the door with his left hand. Sergeant Walker reached around Defendant and grasped Defendant's neck with his right hand while holding Defendant's left arm with his left hand. Sergeant Walker told Defendant, "stop, stop[!] Get out of the vehicle. Get out of the vehicle." Defendant responded by turning on the ignition, putting the automobile in gear, and accelerating in such a manner as to squeal the tires.

At the time Defendant accelerated, Sergeant Walker was still standing in the parking lot with his shoulder and arm inside the truck trying to remove Defendant. Because his arm was trapped between Defendant's back and the truck's seat, Sergeant Walker had to run with the vehicle in order to avoid being dragged or run over. Sergeant Walker was able to pull free without falling. Defendant did not stop and

3

accelerated to ten or fifteen miles per hour before Sergeant Walker was able to extricate himself.

Sergeant Walker watched as Defendant closed his door and left the hotel parking lot. Defendant was traveling twenty-five or thirty miles per hour by the time he exited the parking lot. After losing sight of Defendant, Sergeant Walker ran back to his patrol unit and pursued Defendant. Sergeant James Segura and Deputy Jacob Huckaby were present to help execute the arrest warrant. In pursuing Defendant, Sergeant Walker traveled at speeds up to 115 or 120 miles per hour. According to Sergeant Walker, Sergeant Segura drove at speeds up to 120 or 125 miles per hour.

During the pursuit, Sergeant Walker came within four or five car lengths of Defendant on Highway 90 in Iberia Parish. At that time, Defendant was driving ninety to one hundred miles per hour in medium density traffic. During the chase, all units in pursuit had both their sirens and their lights activated. Sergeant Walker worried that one of the speeding vehicles would hit an uninvolved vehicle. Defendant did not heed the sirens.

Sergeant Walker followed Defendant into St. Martin Parish where Defendant left the roadway. Defendant continued to travel between ninety and one hundred miles per hour in medium traffic. Sergeant Walker continued to worry about the possibility of the automobiles involved in the pursuit colliding with an uninvolved vehicle. The pursuit continued into Lafayette Parish. Dispatchers advised surrounding agencies of the pursuit, and law enforcement from those agencies provided assistance in the chase.

Sergeant Walker testified that there were traffic lights on the route Defendant traveled. Defendant did not heed the red traffic lights; he drove through the first red light at about eighty miles per hour. At that light, traffic had stopped in both lanes

4

waiting for the red light to change; Defendant drove on the shoulder of the road to get around the cars and to go through the light. The second red light was located at the intersection of Highway 92 and Smede Highway near or in Broussard. Defendant turned left onto Highway 92 through the red light. Highway 92 is a two-lane road.

Sergeant Walker stated that, at about the time Defendant turned onto Highway 92, a Broussard unit cut ahead of all three of the Iberia Parish Sheriff units. After pursuing Defendant a distance down Highway 92, the Broussard unit began to slow before finally turning off its lights and pulling over. The pursuit ended because Defendant was no longer in sight. Sergeant Walker continued on to Youngsville for the purpose of meeting with the Lafayette Parish Sheriff's Office. Defendant was not found or arrested until November 6, 2004. Sergeant Walker said that Defendant did not cooperate with Sergeant Walker at any time during the incident. The pursuit in Iberia Parish lasted five to ten minutes.

Iberia Parish Sheriff Lieutenant James Segura testified as the third witness for the prosecution; he has been promoted from sergeant to lieutenant since the October 29, 2004, incident. Lieutenant Segura assisted Detective Landry with the arrest warrant on the evening of October 29, 2004. When Lieutenant Segura arrived at the hotel, he parked his car by backing into a parking space. Sergeant Walker and Deputy Huckaby arrived with Lieutenant Segura; Detective Landry was already onsite. Sergeant Walker parked several spaces over from Lieutenant Segura. When he arrived, Lieutenant Segura noticed a vehicle in the parking lot that matched the description of the blue truck for which they were looking.

Lieutenant Segura averred that, from his vantage point, he was able to observe Sergeant Walker's interaction with Defendant. Lieutenant Segura was about thirty feet away from both Sergeant Walker and Defendant in the well-lit parking lot. As

5

Sergeant Walker approached Defendant's automobile, Sergeant Walker turned and noticed a man walking in his direction. After Sergeant Walker conversed with Defendant, Sergeant Walker went to the back of the pickup truck while Defendant went to the driver's side and opened the door. At the rear of the vehicle, Sergeant Walker looked at the license plate.

Lieutenant Segura then saw Detective Landry exit the hotel and yell, "that's him, that's him." After Detective Landry identified Defendant as the person for whom they were looking, Sergeant Walker left the rear of the vehicle and approached the driver's side door of the truck. Lieutenant Segura heard Sergeant Walker direct Defendant to step out of the vehicle.

Lieutenant Segura saw Defendant attempt to close the truck door, which attempt Sergeant Walker stopped. Lieutenant Segura next saw Sergeant Walker reach into the cab of the truck and grab Defendant. Lieutenant Segura heard Sergeant Walker shouting at Defendant to stop and get out of the vehicle. When Defendant refused to get out of the truck, Sergeant Walker reached further into the automobile in an apparent attempt to pull Defendant from the vehicle. Sergeant Walker repeatedly instructed Defendant to stop and to get out of the vehicle.

Lieutenant Segura heard the vehicle's engine start and the tires squeal. The truck accelerated with Sergeant Walker still halfway in the automobile trying to remove Defendant. Lieutenant Segura worried that Defendant would run over Sergeant Walker. Sergeant Walker went with the truck until he was able to disengage from Defendant and move away from the automobile. From Lieutenant Segura's vantage point, Sergeant Walker had physical control or contact on Defendant as Sergeant Walker commanded Defendant to exit the vehicle.

6

Lieutenant Segura had been running toward the truck to assist Sergeant Walker, so he had to turn around and run back to his unit so he could pursue Defendant. Lieutenant Segura was able to figure out which direction Defendant had taken. When Lieutenant Segura reached Highway 90, he saw taillights moving west at a high rate of speed. Lieutenant Segura, driving approximately 120 miles per hour, radioed Defendant's location so others could assist in the chase. Lieutenant Segura caught up with Defendant at an overpass in Iberia Parish. Defendant was driving extremely fast; dodging cars in both lanes in an attempt to evade the officers.

Lieutenant Segura employed his sirens, lights, and spotlight in an attempt to warn traffic about what was happening. Once Lieutenant Segura caught up with Defendant, he slowed to one hundred miles per hour. Lieutenant Segura followed Defendant to Highway 92 in St. Martin Parish. Because of Defendant's speed, Lieutenant Segura was concerned that there would be a fatal accident.

Lieutenant Segura stated that, beginning in St. Martin Parish, Defendant ignored traffic signals; once, he ran a red light by passing the stopped traffic on the shoulder. Defendant gained a larger lead on Lieutenant Segura by so doing because, although Defendant did not slow, Lieutenant Segura had to make sure the intersection was clear before he proceeded. Defendant also ran a red light when he turned left at the intersection of Highway 90 and Highway 92.

Lieutenant Segura said that, when Defendant turned left at the intersection, a Broussard Police Department unit joined the pursuit by pulling ahead of Lieutenant Segura. The officers were unable to apprehend Defendant that evening.

The fourth witness to testify for the prosecution was construction worker Jace Marceaux. Mr. Marceaux and his family traveled to New Iberia from the Broussard area on October 29, 2004, around 8:00 p.m. Mr. Marceaux drove his family to eat

7

dinner at Duffy's Restaurant in New Iberia. After about an hour, the Marceaux family returned to the vehicle, and Mr. Marceaux turned onto Highway 14 traveling toward Highway 90.

Mr. Marceaux testified that he had turned onto the entry ramp of Highway 90 when he noticed someone "coming up behind me fast." Mr. Marceaux edged his vehicle to the left because he did not know where the truck was going. Mr. Marceaux stated that the truck flew by, spraying rocks on his automobile. Although he attempted to get the license plate, the passing vehicle moved too quickly out of view. Another car was ahead of the Marceauxs on the entry ramp; it was in the truck's way, so it drove around that car at a high rate of speed.

When he saw the truck's lights closing in on him from behind, Mr. Marceaux thought that the truck was going to strike the rear of his vehicle. Mr. Marceaux pulled halfway onto the shoulder in order to avoid being hit. Mr. Marceaux saw the truck pull to the right, so Mr. Marceaux kept his automobile to the left. Mr. Marceaux estimated the truck was traveling at least sixty miles per hour when it passed him. The truck was a dark blue full-sized king cab pickup truck. As the truck disappeared from view, Mr. Marceaux saw police lights behind him. Two or three police cars passed the Marceaux vehicle. When Mr. Marceaux reached Highway 90, he saw the truck weaving in and out of the traffic in an apparent effort to evade the police officers.

Mr. Marceaux's wife called 911 and reported the incident. The operator asked them to meet with an officer, so they met with an officer at a service station located at the corner of Captain Cade and Highway 90. The police officer made a report after speaking with the Marceauxs.

8

Nicole Marceaux, Jace Marceaux's wife, testified as the fifth witness for the prosecution. Ms. Marceaux and her family went to New Iberia on Friday, October 29, 2004; she and her family habitually went to New Iberia every Friday or Saturday night to eat at Duffy's. The Marceauxs arrived at Duffy's around 7:00 p.m. that evening. After leaving the restaurant, the Marceauxs took Center Street to Highway 90 because they wanted to go home. Midway along the entry ramp to Highway 90, her husband told the family to "hold on" and drove onto the left shoulder. A vehicle came up quickly behind them, pulled onto the right shoulder, and then rapidly passed the Marceauxs. As he passed, the vehicle sprayed rocks that hit the Marceauxs' vehicle. The vehicle was traveling too fast for the Marceauxs to obtain a license plate number.

Mrs. Marceaux related that, after passing their vehicle and pulling back into the driving lane, the driver had to return to the shoulder because there was another car in front of the Marceauxs' automobile. The vehicle that passed the Marceauxs' vehicle was a full-sized pickup truck. When the Marceauxs' vehicle merged onto Highway 90, Mrs. Marceaux phoned 911 to report the careless driving. The operator advised Mrs. Marceaux that law enforcement was aware of the situation and told her that officers were in pursuit. The 911 operator asked the Marceauxs to meet with an officer and give statements. The Marceauxs met with an officer at a convenience store on the corner of Captain Cade and Highway 90. Several police units passed the Marceauxs while they were en route.

Broussard Police Department Patrol Supervisor Roger Durgin testified as the State's final witness. On October 29, 2004, Officer Durgin was working when he received a request for assistance by the Iberia Parish Sheriff's Office via the Lafayette Parish Communication Center. The Iberia Parish Sheriff's Office requested

9

assistance with a high speed pursuit traveling toward Broussard on Highway 90. As asked, Officer Durgin drove into the expected path of the pursuit and waited on a median crossover inside the city limits of Broussard in St. Martin Parish.

As the chase neared, Officer Durgin noticed that the dark blue suspect vehicle, which approached at eighty to eighty-five miles per hour, ignored a red light and passed the stopped cars by driving on the shoulder. The driver operated the vehicle in a "very reckless manner;" he drove through the next red light at approximately eighty-five to ninety miles per hour without braking before he turned left on Highway 92 and continued toward Youngsville. Officer Durgin activated his lights and siren and joined the pursuit, but the vehicle did not stop or slow. Officer Durgin stopped chasing the suspect after three or four miles in accordance with an order issued by Officer Durgin's chief. The vehicle was not apprehended.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Sufficiency of Evidence (aggravated obstruction of a highway of commerce)*

Defendant argues that the State failed to sufficiently prove he committed aggravated obstruction of a highway because the offense requires an obstruction. Defendant asserts that the State's theory of prosecution was faulty because it put forth that Defendant violated La.R.S. 14:96 by driving recklessly and by speeding. In support of his argument, Defendant contends that all of the published jurisprudence concerning La.R.S. 14:96 involves an actual obstruction. Defendant urges that the trial court erred when it refused Defendant's attempts to include a definition of

10

obstruction in the jury instructions. The State responds that, under La.R.S. 14:96, the term obstruction includes acts as long as those acts foreseeably endanger human life. The State concedes that there is no published jurisprudence where an act resulted in a conviction for obstruction of a highway, but it maintains that the plain language of the statute includes actions as well as obstruction.

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id*.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

"Aggravated obstruction of a highway of commerce is the intentional or criminally negligent placing of anything, *or performance of any act*, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered." La.R.S. 14:96 (emphasis added).

We are cognizant of this court's decision in *State v. Cox*, 07-744 (La.App. 3 Cir. 1/30/08), 974 So.2d 891, with the State's writ application having been granted by the Louisiana Supreme Court at 08-492 (La. 10/3/08), 992 So.2d 996. As in the instant case, *Cox* involved a high speed police pursuit. During the chase, Cox left his lane of travel while negotiating a curve and struck an oncoming vehicle. The driver of the other vehicle died as a result of the injuries received in the crash. This court refused to affirm the conviction for aggravated obstruction of a highway based on a

11

finding that Cox did not place anything in the highway. However, in the instant case, we find that the language of La.R.S. 14:96 as quoted above, specifically the inclusion of "performance of any act, supports a finding in this case that the State proved that Defendant committed the elements of the offense.

Like Defendant in the current case, the defendant in *State v. Keltner*, 542 So.2d 42 (La.App. 2 Cir.), *writ denied*, 548 So.2d 1228 (La.1989) was also convicted of aggravated obstruction of a highway of commerce for performing an act on a highway that foreseeably endangered human life; however, sufficiency of the evidence was not an issue before the *Keltner* court. Keltner drove an eighteen-wheeler carrying a full load when two of his rear tires blew. *Id*. Thinking he could make it to the next truck stop, the defendant proceeded by driving slowly, around five miles per hour, on the shoulder of Interstate 20 and by sometimes veering back into the driving lane when the shoulder became too rough. *Id*. The defendant had turned on his emergency blinkers, but several drivers attested they narrowly avoided collisions with the truck. *Id*. Ultimately, a bus collided with the defendant's tractor trailer; two people were killed and several were injured. *Id*.

In the instant case, the evidence presented at trial shows that Defendant drove his truck at excessive speeds on roadways in Iberia Parish. Officer testimony shows that Defendant drove at excessive speeds because he traveled at speeds greater than one hundred miles per hour, which is more than twenty miles per hour over the highest posted speed limit in the State of Louisiana. While in that parish, he forced at least one vehicle, the Marceauxs' automobile, partially off the road and onto the shoulder, which foreseeably could have caused an accident had Mr. Marceaux veered too far or lost control of his vehicle. After forcing the Marceaux family off the road, Defendant wove in and out of traffic on Highway 90 at excessive speeds, which

12

behavior also could have foreseeably caused life-threatening accidents. In St. Martin Parish, Defendant's actions became even more dangerous as he ran two red lights, which created an additional risk of collision with traffic legally crossing the intersections.

Thus, this court finds that, when viewed in a light most favorable to the prosecution, a reasonable factfinder could have found that the State proved Defendant violated the elements of the offense set forth in La.R.S. 14:96.

*Jury Instructions*

At trial, the defense requested the inclusion of the following jury instruction:

> That in order to convict Mr. Smith of Aggravated Obstruction of a Highway of Commerce, you must find beyond a reasonable doubt that he intentionally or criminally negligently placed anything on a road or a highway which caused an obstruction, or he performed an act which caused an obstruction on a road or a highway and it was foreseeable that human life might be endangered.

The trial court denied Defendant's request because "[n]owhere in that statute does it say that act or placement of an object must obstruct, impede or in any way affect the traffic other than endangering, that it might endanger human life." Defendant objected to the exclusion of this requested jury instruction.

We find that the trial court properly excluded the requested jury charge because the requested instruction defined the law to require the placement of an obstructive barrier in the roadway, which was a misstatement of the law. Under La.Code Crim.P. art. 802, the trial court is bound to issue jury instructions concerning the law applicable to the case. The trial court correctly pointed out that the language of statute under which Defendant was charged, La.R.S. 14:96, did not require placement of any sort of obstacle on the highway. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S. 1:4. Moreover, "[t]he articles of this Code . . . shall be given a

13

genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.R.S. 14:3. Hence, this court finds that the trial court did not err in adhering to the plain language of La.R.S. 14:96 or in refusing to exclude instructions that were not law applicable to the case. Accordingly, this argument by Defendant is without merit.

Defendant claims that the trial court erred in refusing to give a jury charge allowing the offense simple obstruction of a highway of commerce as a responsive verdict to the aggravated obstruction of a highway offense. Other than quoting the statute for simple obstruction of a highway of commerce, Defendant cites no legal premise in support of this claim. The prosecution responds that the trial court correctly refused to include simple obstruction as a jury charge.

At trial, Defendant objected to the trial court's exclusion of a jury instruction giving simple obstruction of a highway as a responsive verdict to aggravated obstruction of a highway. The trial court held that simple obstruction of a highway was not a lesser included offense of aggravated obstruction because simple obstruction, as defined in La.R.S. 14:97, contained an extra element not present in the aggravated offense; to wit, "[t]he requirement that the action or object placed on the highway will render movement more difficult."

As previously stated, La.Code Crim.P. art. 802 requires the trial court to charge the jury as to the law applicable to the case. Additionally, "[a]fter charging the jury, the judge shall give the jury a written list of the verdicts responsive to each offense charged, with each separately stated." La.Code Crim.P. art. 809.

The Louisiana Code of Criminal Procedure does not specifically set forth the responsive verdicts to aggravated obstruction of a highway of commerce. La.Code

14

Crim.P. art. 814. "In all cases not provided for in Article 814, the following verdicts are responsive: (1) Guilty; (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) Not Guilty." La.Code Crim.P. art. 815. "A lesser offense is included in the charge of the greater offense if all of the elements of the lesser crime are included in the definition of the greater offense." *State v. McCoy*, 337 So.2d 192, 196 (La.1976). "Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive." *State v. Poe*, 38 So.2d 359, 363 (La.1948) (on rehearing).

As previously stated, "[a]ggravated obstruction of a highway of commerce is the intentional or criminally negligent placing of anything, or performance of any act, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered." La.R.S. 14:96. "Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult." La.R.S. 14:97.

Because simple obstruction of a highway of commerce includes a mandatory element of rendering movement more difficult on the highway of commerce and because aggravated obstruction of a highway of commerce does not require an impediment to traffic, La.R.S. 14:97 is not responsive to La.R.S. 14:96. Therefore, the trial court did not err in refusing to give simple obstruction of a highway of commerce as a responsive verdict to aggravated obstruction of a highway of commerce. Accordingly, this assignment of error is without merit.

15

*Sufficiency of Evidence (attempted aggravated escape)*

Defendant also complains that the evidence presented at trial was insufficient to prove he was guilty of attempted aggravated escape because he "was never in the custody of officers." Defendant maintains that none of the evidence presented at trial proves that Defendant was in custody at the time he fled in his vehicle. The State responds that it proved Defendant was in custody by showing that a police officer had physical hold of Defendant by two different points of contact and by proving that the officer was in the process of physically removing Defendant from the vehicle when Defendant accelerated his automobile.

> Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.

La.R.S. 14:110(C)(1). The version of aggravated escape under which Defendant was prosecuted requires the intentional departure of a detained person from the legal custody of any law enforcement officer prior to confinement when the circumstances of the departure endanger human life. *See State v. Bullock*, 576 So.2d 453, 455-56 (La.1991).

Usually, a person needs only to intend a crime and perform an act toward accomplishing that crime to be guilty of attempting that crime:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A). The State must have shown that Defendant was in legal custody in order to prove Defendant was actually capable of attempting an aggravated escape.

16

Defendant asserts only that the State failed to prove he was in custody at the time of his departure; he does not challenge the sufficiency of the evidence presented to prove the remaining elements of the offense. The evidence presented at trial shows that a law enforcement officer, Sergeant Walker, pursuant to a valid arrest warrant, took hold of Defendant by clasping Defendant's wrist and by reaching around Defendant's back and grabbing Defendant's neck. The officer demanded Defendant stop and exit the truck while also attempting to wrest Defendant from the vehicle. Defendant broke the officer's hold by rapidly accelerating his vehicle with the officer still partially in the truck, which action caused the officer to release Defendant out of fear for his life and safety. There is no evidence in the record showing that the officer ever told Defendant that he was under arrest.

The *Bullock* court found that defendant guilty of simple escape under the following circumstances:

> On February 1, 1987, police responded to a call of burglary in progress at an Exxon station located at 3725 South Carrollton Avenue in New Orleans. They looked inside the building, where they saw defendant attempting to hide. When the police ordered defendant to halt, he ran away, crashing through a plate glass window. Defendant was apprehended after a brief chase. Cut and bleeding, he was arrested, handcuffed and taken by police from the scene directly to Charity Hospital for treatment of his lacerations. Once at the hospital, defendant was placed on a stretcher in the emergency accident room. The doctor advised the police to take defendant's handcuffs from behind him and place them in front so he could be treated. After the police did so, defendant jumped off the stretcher and fled out the back door of the emergency room to the hallway leading out of the hospital. Defendant was apprehended when he collided with a hospital security guard, and was arrested for simple escape.

*Bullock*, 576 So.2d at 454.

In *State v. Pierre*, 259 So.2d 6 (La.1972), the supreme court discussed the flight doctrine; in so doing, it seemed to distinguish evading imminent arrest from escaping from legal custody. The language used by the supreme court in discussing

17

whether a line-up identification of a defendant should have been suppressed seems to support this premise: "Having found that the defendant was legally arrested, we proceed to a determination of the constitutionality vel non of the instant line-up. When the line-up occurred, defendant was in legal custody and under no arrest." *State v. Johnson*, 230 So.2d 825, 831 (La.1970).

This court follows the idea that custody follows arrest in the simple escape case of *State v. Brooks*, 99-395, pp. 2-5 (La.App. 3 Cir. 12/22/99), 755 So.2d 311, 312-14, *writ denied*, 00-1764 (La. 6/1/01), 793 So.2d 178:

> Defendant does not contest that he fled the police station during booking. He argues, instead, that he did not "escape" because he was never in the "lawful custody" of the Opelousas City Police Department. Specifically, Defendant contends that his arrest on the remaining after being forbidden charge was illegal because he was arrested on a public sidewalk.

> "Simple escape" is defined in La.R.S. 14:110(A)(1) (emphasis added) as:

>> The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or *from the lawful custody of any law enforcement officer* or officer of the Department of Public Safety and Corrections.

> The Reporter's Comment (citations omitted) discusses the "lawful custody" requirement as follows:

>> As long as the arrest and commitment are "legal" any attempt to escape is a crime, despite the guilt or innocence of the culprit. But if the warrant of arrest or commitment is void, the prisoner is not liable for escaping. However an informality or irregularity in the process of commitment is not justification to escape.

> . . . .

> On May 12, 1996, Officer David Zerangue was on security patrol outside the Manhattan Lounge in Opelousas. In the early morning hours, Officer Zerangue observed the owner of the nightclub refuse to admit Defendant because Defendant was wearing a bandana on his head.

18

Officer Zerangue then told Defendant to leave, but Defendant kept pacing on the sidewalk near the lounge. At trial, Officer Zerangue described Defendant's actions as follows:

> He made a couple of attempts to go back into the club. I warned him to leave. He went on the north side of the building, which is the South Street side. The owner came back in after the first argument between the two. I advised the owner to go back into the club, I advised Mr. Brooks to leave. The owner came back outside and when Mr. Brooks spotted him, he started walking toward ... left the corner of Academy and South and walked back towards the front door, and him [sic] and the owner got into an argument again.

Officer Zerangue warned Defendant that he would be arrested if he did not leave. When Defendant replied, "You can take me to jail," Officer Zerangue arrested him for remaining after being forbidden. Officer Zerangue admitted that Defendant was on the sidewalk at the time of his arrest. However, he testified that he arrested Defendant because it was apparent Defendant would continue to attempt to enter the club and to cause trouble for the owner. Officer Zerangue explained that Defendant was arrested "right at the front door. Still on the sidewalk, but in front of the front door."

La.R.S. [sic] 14:63.3 A (emphasis added) provides:

> No person shall without authority go into or upon or remain in or upon or *attempt to go into or upon* or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, *after having been forbidden to do so*, either orally or in writing, including by means of any sign hereinafter described, *by any owner, lessee, or custodian of the property or by any other authorized person.*

Defendant contests the validity of his arrest because there is no testimony that places him on club property after he was initially told to leave. However, the statute clearly criminalizes an "*attempt* to go into or upon" any property belonging to another after being forbidden. We find that one may[ ]*attempt* to enter private property from a public sidewalk and, further, that is what Defendant did in this case.

The only discussion of La.R.S. 14:63.3 in the context of a public sidewalk is found in a civil action, *Melancon v. Trahan*, 94-26, p. 8 (La.App. 3 Cir. 10/5/94); 645 So.2d 722, 726, *writ denied*, 95-87 (La.3/10/95); 650 So.2d 1183, in which we stated that "the statute does not prohibit standing on a public sidewalk." In the present case,

19

however, Defendant was not arrested because he remained on the sidewalk but, rather, because of his attempts to enter the nightclub--including arguing with the owner--after being refused admission by the owner and told to leave by the security officer.

This assignment of error lacks merit.

The supreme court has held that, for *Miranda* warning purposes, custody is determined "by two distinct inquiries: an objective assessment of . . . whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in th[at] position . . . would gauge the breadth of his freedom of action." *State v. Kennedy*, 05-1981, p. 50 (La. 5/22/07), 957 So.2d 757, 794.[3] In the second inquiry, the restraint on freedom of movement should be of the degree associated with a formal arrest. *State v. Saltzman*, 03-1423, p. 1 (La. 4/8/04), 871 So.2d 1087, 1088.

We find that an ordinary prudent person would have equated the degree to which the officer actually held Defendant with the restraint exercised in a formal arrest and, therefore, find that Defendant was in legal custody at the time of his flight.

*Discovery Agreements*

In the "Specifications of Error" section of Defendant's appellate brief, he asserts that the trial court erred in enforcing discovery agreements between the prosecution and the defense. However, Defendant does not brief this issue. Therefore, pursuant to Uniform Rules—Courts of Appeal, Rule 2-12.4, we consider this assignment of error to have been abandoned and do not consider it.

**DECREE**

For all of the foregoing reasons, Defendant's convictions and sentences are affirmed.

---

[3]*Certiorari* has been granted in this case by the Supreme Court. *Kennedy v. Louisiana*, ___ U.S. ___, 128 S.Ct. 829 (2008).

**AFFIRMED.**

STATE OF LOUISIANA

VERSUS

MICHAEL W. SMITH


EZELL, JUDGE, Dissents:

I agree with the *State v. Cox*, 07-774 (La.App. 3 Cir. 1/30/08), 974 So.2d 891, *writ granted*, 08-492 (La. 10/3/08), 992 So.2d 996, decision, and therefore would not affirm the aggravated obstruction of a highway of commerce conviction.