WEIMER, Justice.
 
 [1]
 

 hThe State’s writ application was granted to determine the correct interpretation of LSA-R.S. 14:96 which defines the crime of aggravated obstruction of a highway of commerce as “the intentional or criminally negligent placing of anything, or performance of any act, on any ... highway ... wherein it is foreseeable that human life might be endangered.”
 

 For reasons that follow, we reverse the ruling of the court of appeal, reinstate the jury verdict and sentences imposed by the trial court, and remand to the court of appeal for consideration of pretermitted issues not addressed in the original opinion.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 On March 19, 2005, the defendant arrived at his son’s residence at approximately 11:00 a.m. He informed his son of his flight from the police and his need for money. Defendant’s son instructed him to meet him at a particular truck stop | ¿in Calcasieu Parish and promised to bring him money. The son then contacted authorities in an attempt to effect the peaceful surrender of his father at the truck stop.
 

 Defendant noticed police at the truck stop and drove away. A high speed chase
 
 *870
 
 ensued with the defendant driving around police road blocks and through residential neighborhoods at speeds approaching 100 miles per hour. Out of a concern for safety, the police backed off the chase. While negotiating a curve on Louisiana Highway 12, defendant’s vehicle crossed the center line and struck another vehicle traveling in the opposite direction. The driver of the other vehicle died as a result of the injuries sustained in the collision. Her husband survived.
 

 The defendant was charged by grand jury indictment with one count of manslaughter in violation of LSA-R.S. 14:31(A)(2)(a),
 
 [2]
 
 one count of aggravated obstruction of a highway of commerce in violation of LSA-R.S. 14:96,
 
 [3]
 
 and one count of aggravated criminal damage to property in violation of LSA-R.S. 14:55.
 
 [4]
 

 [<¡A jury convicted the defendant of all counts and the trial court sentenced him to 40 years imprisonment at hard labor on the manslaughter conviction, 10 years imprisonment at hard labor on the aggravated criminal damage to property conviction and 15 years imprisonment at hard labor on the aggravated obstruction to a highway of commerce conviction. The court further ordered the aggravated criminal damage to property sentence to run concurrently with the manslaughter conviction, but ordered the sentence for the aggravated obstruction of a highway of commerce sentence to run consecutively with the manslaughter sentence.
 

 Defendant appealed his convictions and sentences. The appellate court found the evidence did not support defendant’s conviction of aggravated obstruction of a highway of commerce. Thus, the court vacated the convictions and sentences for the charges of manslaughter and aggravated obstruction of a highway of commerce.
 
 [5]
 
 Concluding the record supported a finding that defendant’s conduct amounted to criminal negligence, the appellate court found defendant guilty of the responsive verdict of negligent homicide and remanded the matter for sentencing on that conviction and for compliance with the notification requirements of LSA-C.Cr.P. art. 930.8.
 
 State v. Cox,
 
 07-0774 (La.App. 3 Cir. 1/30/08), 974 So.2d 891.
 

 
 *871
 
 Both parties sought writ of review to this court. The State’s writ application was granted to determine whether the court of appeal properly reversed the convictions of manslaughter and aggravated obstruction of a highway of commerce.
 
 State v. Cox,
 
 08-0492 (La.10/3/08), 992 So.2d 996.
 

 ^DISCUSSION
 

 On appeal, the defendant argued the evidence was insufficient to support his conviction on each offense. The court of appeal correctly acknowledged its role was to determine whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court further acknowledged that the role of the fact finder is to weigh the respective credibility of the witnesses; thus, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the
 
 Jackson
 
 standard of review. The record must reflect that the State has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
 
 State v. Cox,
 
 07-0774 at 2-3, 974 So.2d at 895.
 

 Defendant argued that LSA-R.S. 14:96 had never been interpreted to find someone in the wrong lane of travel obstructed that lane as contemplated by the statute. Defendant further noted that to interpret the statute in such a manner would make virtually all traffic offenses felonies. Defendant also argued that roads are designed to accommodate traffic, the statute addresses only that which does not belong on the highway and the reference to “placing” within the statute contemplates putting stationary items on roadways.
 

 Jurisprudence interpreting LSA-R.S. 14:96 is minimal. Only one Louisiana case has interpreted the evidentiary sufficiency requirement for aggravated obstruction of a highway of commerce. In
 
 State v. Winnon,
 
 28,654 (La.App. 2 Cir. 9/25/96), 681 So.2d 463,
 
 writ denied,
 
 96-2576 (La.3/27/97), 692 So.2d 391, the Second Circuit found defendant had created a foreseeable danger to human life when he placed his vehicle perpendicular to the highway, blocked passage of the victim’s |svehicle, and then assaulted her. In that case, the defendant exited the vehicle after blocking the roadway with the vehicle. The court found defendant created an obstruction by the placement of his vehicle across the roadway.
 

 Recently, the First Circuit found erratic driving witnessed by a private person was sufficient to justify a stop for the felony offense of aggravated obstruction of a highway of commerce. The court focused on the words of the statute defining aggravated obstruction of a highway of commerce as “the intentional or criminally negligent placing of anything or performance of any act, on any railway, railroad navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered.”
 
 State v. Lavergne,
 
 08-0044, p. 7 (La.App. 1 Cir. 5/2/08), 991 So.2d 86, 90. Another case addressing aggravated obstruction of a highway of commerce merely considered claims of excessive sentencing under the statute.
 
 See, State v. Keltner,
 
 542 So.2d 42 (La.App. 2 Cir.),
 
 writ denied,
 
 548 So.2d 1228 (1989).
 

 In reviewing the record evidence, the court of appeal agreed with the defendant that the evidence did not support his conviction of aggravated obstruction of a highway of commerce. In analyzing the statute, the appellate court focused on the term “placing” of anything on a highway.
 
 *872
 
 The appellate court found the evidence established that defendant “drove” his vehicle on the wrong side of the highway, a violation of LSA-R.S. 32:71, further finding the act of driving in the wrong lane on a highway did not equate to placing anything on the highway.
 
 State v. Cox,
 
 07-0774 at 5, 974 So.2d at 896.
 

 The court of appeal found
 
 Winnon
 
 distinguishable from the matter currently before the court and did not consider the State’s argument regarding the disjunctive nature of the definition contained in the statute.
 
 Id.
 

 | f,In its writ application to this court, the State contends the court of appeal erred in concluding the evidence presented was insufficient to sustain defendant’s convictions for manslaughter and aggravated obstruction of a highway of commerce. The State insists the conviction for aggravated obstruction of a highway of commerce was proper if the definition of “placing” or “performance of any act” under LSA-R.S. 14:96 would include turning one’s vehicle into the oncoming lane of traffic. The State argues the defendant “placed” his vehicle against oncoming traffic by driving into the opposite lane, or alternatively, “performed an act” which created a foreseeable risk to human life.
 

 We note this case presents a unique set of factual circumstances. Prior to the collision, the defendant was engaged in a high speed chase with authorities through residential neighborhoods at speeds approaching 100 miles per hour. The evidence presented at trial estimated the speed of defendant’s vehicle at the time of the crash to be 85 miles per hour with the speed of the decedent’s vehicle about 40. Evidence also indicated the decedent attempted to avoid the collision by veering to her right as far as possible. Additional testimony established that defendant turned his vehicle toward the victims into the oncoming lane of travel. An accident reconstruction expert testified as to his findings regarding the collision which included the fact that there was no evidence of loss of control of defendant’s vehicle prior to impact. He found no evidence of prior or pre-skid marks, tire marks, or tracking marks on the highway and nothing to indicate the cause of the collision resulted from inattention or over correction. It was the expert’s opinion that the collision occurred because defendant’s vehicle made a four degree turn to the left immediately prior to impact. Significantly, the decedent’s husband testified that he “felt like a target” as a result of the defendant purposefully swerving to cause a collision. In addition to the ^evidence regarding the chase and the crash itself, there was testimony by the defendant’s son at the trial indicating the defendant proclaimed that he would not be taken alive and nobody was going to get in his way. In connection with the testimony, the State introduced a written statement identified as having being written by the defendant. Although the content of the statement indicated he would not go through with it, defendant wrote: “I think every day about hitting a truck head on.”
 

 We find the court of appeal erred in failing to consider the statute in its entirety. An offender commits the crime of aggravated obstruction of a highway when he or she intentionally or criminally negligently places anything or performs any act on a highway wherein it is foreseeable that human life might be endangered. LSA-R.S. 14:96.
 

 We need not resolve whether the evidence sufficiently establishes that defendant “placed” his vehicle in the opposite lane of travel under circumstances which clearly created a foreseeable risk to human life. On the other side of the statute’s disjunctive “or,” defendant’s conduct rep
 
 *873
 
 resented “any other act” which created a foreseeable risk to human life.
 
 [6]
 
 Defendant surely performed an act which created a foreseeable risk to human life by driving into the opposite lane of travel at an estimated speed of 85 miles per hour and driving so as to intentionally target the victim’s vehicle. The difference between parking a vehicle in the opposite lane of travel and leaving it as an obstruction to oncoming traffic and speeding in the wrong direction in the opposite lane is that the latter act effectively creates a moving obstruction, increasing the risk to human life as it reduces the time in which oncoming traffic has to take evasive maneuvers to avoid a collision.
 

 |sThe court of appeal focused its attention on the term “placed” which would tend to suggest that the statute is violated only when a stationary object has been placed in the roadway. However, the court of appeal failed to adequately consider the remainder of the statute which provides that “performance of any act” on a highway endangering human life is also prohibited. We find the concern expressed by the court of appeal that the statute might be applied too broadly in the context of traffic violations is a concern more appropriately addressed by the legislature. Given the unique facts of this case, particularly the defendant’s statements he would not be taken alive and the surviving victim’s testimony he believed he was targeted by the defendant’s driving, this case does not present an extreme application of the statute. Ultimately, we are bound by the requirement that provisions of the criminal code “shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.”
 
 See
 
 LSA-R.S. 14:3, which guides the interpretation and application of criminal code provisions. The language of the statute, which requires the State to prove intent or criminal negligence in placing of anything or performance of any act on a highway where it is foreseeable that human life might be endangered, serves to limit the application of the statute.
 

 After a thorough review of the record, we find that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of aggravated obstruction of a highway of commerce were proven beyond a reasonable doubt. Thus, we reverse the ruling of the court of appeal and reinstate the jury verdict of guilty of aggravated obstruction of a highway of commerce. Based on the reinstatement of that guilty verdict, the manslaughter guilty verdict is also reinstated. We reinstate the sentences imposed by the trial court |fland remand to the court of appeal for consideration of issues pretermitted by the original opinion.
 
 [7]
 

 CONCLUSION
 

 For the foregoing reasons, the decision of the court of appeal is reversed. The
 
 *874
 
 jury verdict and sentences are reinstated and the matter is remanded to the court of appeal for consideration of issues preter-mitted by the original opinion.
 

 REVERSED; JURY VERDICT AND SENTENCES REINSTATED; REMANDED TO THE COURT OF APPEAL.
 

 [1]
 

 . Calogero, C.J., retired, participated in this decision which was argued prior to his retirement.
 

 [2]
 

 . LSA-R.S. 14:31(A)(2)(a) defines manslaughter as follows:
 

 (2) A homicide committed, without any intent to cause death or great bodily harm.
 

 (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person.
 

 [3]
 

 . LSA-R.S. 14:96 provides:
 

 Aggravated obstruction of a highway of commerce is the intentional or criminally negligent placing of anything, or performance of any act, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered.
 

 Whoever commits the crime of aggravated obstruction of a highway of commerce shall be imprisoned, with or without hard labor, for not more than fifteen years.
 

 [4]
 

 . LSA-R.S. 14:55 provides:
 

 Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.
 

 Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both.
 

 [5]
 

 . Based on jury instructions to which the State failed to object, the manslaughter conviction was contingent on a guilty verdict in the aggravated obstruction of a highway of commerce charge.
 
 State v. Cox,
 
 07-0774 at 9-10, 974 So.2d at 898-899.
 

 [6]
 

 . The reporter's comment to LSA-R.S. 14:96 refers to the reporter’s comment for LSA-R.S. 14:97 which, in turn, states: "Not only obstruction but also any act which will impede travel and commerce comes within the purview of these articles.”
 

 [7]
 

 . On appeal, defendant argued his convictions for manslaughter and the underlying felonies violate the constitutional principle that bars double jeopardy. Because the court of appeal reversed the convictions of manslaughter and aggravated obstruction of a highway, the court found that assignment of error moot. Reinstatement of the convictions of manslaughter and aggravated obstruction of a highway by this court requires remand to the court of appeal for consideration of the double jeopardy issue because that issue was not addressed by the court of appeal.