JOHNSON, J. h Defendant appeals his conviction and sentence for aggravated obstruction of a highway of commerce on the basis of insufficient evidence. For the reasons that follow, we affirm. Defendant, Kenneth Washington, was charged on July 25, 2014 in a bill of information with one count of aggravated obstruction of a highway of commerce in violation of La. R.S. 14:96 (count one) and, one count of resisting a police officer .with the use or threats of violence in violation of La. R.S,. 14:108.2 .(count two). He pled not guilty and proceeded to trial on January 19,2016. After a two-day trial, a six-person jury found him guilty as charged on both counts. On April 28, 2016, the trial court sentenced Defendant to one year and six months on each count to run concurrently with each, other. On the same date, the State filed a multiple offender bill of information on count one, alleging Defendant to be a third felony offender based on a 2004 conviction for possession of cocaine and a 2011 conviction for aggravated flight from an officer. After a hearing, the trial court adjudicated Defendant a third felony offender, vacated his original sentence on-count one, and resentenced Defendant as a multiple offender under La. R.S. 15:529,1 to .10 years imprisonment at hard labor without benefit of probation or. suspension of sentence. The trial court ordered the enhanced sentence to run concurrently with the previously imposed sentence on count two. Defendant now appeals. FACTS ■ At approximately 2:30-2:45 p.m. on June 17, 2014, members of the Jefferson Parish Sheriffs Office’s Project STAR[1] team were proactively patrolling lathe Betty Projects area of Marrero,[2] Detective William Whittington was driving an unmarked black Chevrolet Impala, with Detective John Wiebelt in the front passenger seat and Detective Joseph Waguespack in the rear seat, when they observed a grey Acu-ra near the intersection of Second Zion and Lincoln. The "officers observed a black male subject approach the driver’s side of the Acura and reach into the driver’s side window where he remained for ten to twenty seconds. The officers testified that Defendant, who was the driver of the Acu-ra, and the male subject appeared to have exchanged something. Detective Wagues-pack specifically testified that the male subject came out of the car with something in his clenched hand, although he could not identify what it was. Believing they had just witnessed a hand-to-hand drug transaction, the officers decided to conduct an investigatory stop of the Acura. Detective Whittington radioed Detective Sean Lee, another Project STAR member who was patrolling in the area, for assistance and then activated his lights and sirens to make the stop. As Detective Whittington pulled up behind the Acura, Detective Lee, who was also driving an unmarked black Chevrolet Impala, pulled in front of Defendant’s vehicle, partially blocking the car in an attempt to stop it. Detective Lee testified that he had his lights on but not his siren. Instead of stopping, Defendant drove quickly around Detective Lee’s unit and drove away, at a speed in excess of 40 mph in a residential area with a posted speed limit of 20 mph. The officers pursued Defendant, who, according to Detective Wag-uespack, took them on a “pretty good little chase” across Ames, a major intersection, into another subdivision on the eastbound side of Ames. The officers continued to follow Defendant with their lights and sirens on trying to initiate a stop. According to the officers, Defendant disregarded several stop signs | ¡¡during the chase, reached speeds of 60-70 mph, swerved off the road and hit a mailbox and garbage can, and drove “with no regard for anybody on the street.” At one point, the officers backed off from Defendant because they noticed he was “getting really reckless” and they feared for the public and themselves. The officers continued to follow Defendant to the 6100 block of August Avenue where Defendant had stopped his vehicle in the middle of the street, blocking the westbound lane of traffic. Detective Wiebelt testified that by the time they caught up to Defendant, he had exited his car. Detective Wiebelt explained that Defendant started screaming and running at an angle towards the officers with balled up fists. He described Defendant’s actions as aggressive, “like he was going to put. up a fight.” Detective Waguespack made first contact with Defendant and used his body to knock Defendant off balance to get him on the ground, during which time Detective Waguespack also fell to the ground. A struggle ensued in the street with both Defendant and Detective Waguespack rolling around on the street as Detective Waguespack tried to handcuff Defendant as he continued punching and kicking. Several officers arrived on the scene to assist, and pepper spray was .deployed twice in an attempt to subdue Defendant. Defendant was ultimately handcuffed, despite his continued resistance. When asked why he ran and fought, Defendant responded that he hated the police and would run from them every time he saw them. Although no drugs were found in Defendant’s car, Defendant had $1,800 on his person in denominations that Detective Waguespack stated were consistent with narcotic dealing. After his arrest, Defendant was transported to the Jefferson Parish, Correctional Center, where he made several phone calls. Portions of the phone calls were played for the jury. In the phone calls, Defendant admitted he was involved in a pursuit with vehicles he identified as law enforcement, admitted his |4 tires started sliding and that he struck a mailbox, and admitted that' he will' run every time he sees the police because he does not like the police. At trial, Defendant presented testimony from Troy Robertson,, who had known Defendant for 10-15 years. Mr. Robertson testified that he was cutting grass on‘ the day of the incident when Defendant passed by in a grey Acura and spoke tó him. He stated that a black sedan came behind Defendant and was following him. Mr. Robertson noted that Defendant was driving at a slow rate of speed while the sedan was driving at a high rate of speed without its lights or sirens. ISSUE In his sole assignment of error, Defendant argues the-evidence was insufficient to support..his conviction for aggravated obstruction of a highway of commerce -because there was no proof he was speeding and no proof he engaged in any action that put any human life in danger.[3] DISCUSSION In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-674 (La. 6/29/01); 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). In the instant case, Defendant was convicted of aggravated obstruction of a highway of commerce in violation of La. R.S. 14:96. La. R.S. 14:96(A) defines aggravated obstruction of a highway of commerce as “the intentional or criminally | .^negligent placing of anything or performance of any act on any ... road, highway, [or] thoroughfare ... wherein it is foreseeable that human life might be endangered.” Several cases have discussed the sufficiency of evidence in relation to La. R.S. 14:96. In State v. Cox, 08-492 (La. 1/21/09); 5 So.3d 869, the defendant argued that the evidence was insufficient to support his conviction of aggravated obstruction of a highway of commerce. The evidence showed that the defendant was engaged in a high-speed.. chase with authorities through residential neighborhoods at speeds approaching 100 mph. While negotiating a curve, .the defendant’s vehicle crossed the center line at a speed of 85 mph and struck another vehicle traveling in the opposite direction at a speed of 40 mph, causing the death of the driver of the other vehicle. The evidence indicated that the defendant intentionally turned his vehicle toward the victims into the oncoming lane of travel. Additionally, the defendant’s son testified that the defendant proclaimed that “he would not be taken alive, and nobody was going to get in his way.” Id. at 872.' Finding sufficient evidence to support the conviction, the supreme court noted that the defendant’s conduct represented “any other act” which created.a foreseeable risk to human life.[4] Also, in State v. Smith, 07-1443 (La. App. 3 Cir. 1/21/09); 2 So.3d 1187, writ denied, 09-407 (La. 11/6/09); 21 So.3d 300, the Third Circuit found that the evidence was sufficient to support the defendant’s conviction of aggravated obstruction of a highway. The court relied on the evidence that the defendant drove his truck at excessive speeds greater, than 100 mph on roadways, forced at least one vehicle partially off the road and onto the shoulder, wove in and out of |fitraffic at excessive speeds, and ran two red lights, all of which could have foreseeably caused life-threatening accidents. Upon review of the record in the instant case, we find the evidence was sufficient to support Defendant’s conviction for aggravated obstruction of a highway of commerce. The evidence presented by the State showed that Defendant led the police on a high speed chase through two residential neighborhoods where children were outside and people were walking around, ran several stop signs, drove recklessly, lost control of his vehicle, swerved off the roadway, struck a garbage can and a mailbox completely removing it from the ground, and ultimately exited his vehicle after leaving it in the middle of the roadway. The police even “backed off’ of the chase at one point because of Defendant’s recklessness and they feared for the safety of the public and themselves. Additionally, there was testimony that Defendant drove by a construction crew in one of the neighborhoods traveling at a speed of 60-70 mph. Further, the State presented several of Defendant’s jail phone calls wherein he stated to the person on the other end that he was involved in a pursuit, that he knew the black vehicles were law enforcement, that his tires started sliding, that he struck a mailbox, that he exited his vehicle because he was “tired” of the pursuit, and that whenever he saw the police he was going to run as he did not like them. We find this evidence sufficiently proves intentional or criminally negligent actions wherein it was foreseeable that human life might be endangered. Although Defendant presented a witness who testified that Defendant was driving slowly and that there was no construction work on the street on the day in question, the jury clearly rejected this version of events. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La. App. 5 Cir. 4/29/97); 694 So.2d 1052, 1056. ERRORS PATENT We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920, and find no errors that require corrective action. DECREE Finding sufficient evidence to support his conviction, we affirm Defendant’s conviction and sentence for aggravated obstruction of a'highway of commerce. AFFIRMED . Project STAR is a proactive unit designed to patrol higher crime neighborhoods looking for any kind of street crime, including narcotics, guns, stolen cars and gang activity. . ' This area was identified as a residential area between Ames and Westwood (east and west boundaries) and Lapalcó and the West-bank Expressway (north and south boundaries). . Although Defendant was also convicted of resisting a police officer with force or violence, he does not challenge that conviction in this appeal. . It is noted that the supreme court remanded the case for consideration of issues not addressed in the appellate court’s original opinion. On remand, the Third Circuit vacated the defendant's conviction for aggravated obstruction of a highway of commerce based on double jeopardy. State v. Cox, 07-774 (La. App. 3 Cir. 3/4/09); 4 So.3d 998, 1000, writ denied, 08-602 (La. 9/4/09); 17 So.3d 948.